UNITED STATES of America

v.

James William HARDING.

Cr. No. 11077.

United States District Court
D. Connecticut.

Nov. 19, 1964.

Howard T. Owens, Jr., Asst. U. S. Atty., New Haven, Conn. (Robert C. Zampano, U. S. Atty., New Haven, Conn., on the brief), for the United States.

John N. Cole, of Maguire, Cole & Bentley, Stamford, Conn. (Robert W. Benson, of Maguire, Cole & Bentley, Stamford, Conn., on the brief), for defendant.

TIMBERS, Chief Judge.

Defendant Harding, having waived a jury, was tried to the Court upon three counts [1] of an indictment charging him and co-defendant Taubl,[2] in violation of 18 U.S.C. § 1706, with cutting open two mail pouches and a mail sack, and upon one count charging Harding and Taubl, in violation of 18 U.S.C. § 371, with conspiring among themselves and with one Glynn [3] to violate 18 U.S.C. §§ 471, 472, 1706, 1707 and 1708.

## FINDINGS OF FACT

After a three day trial, the Court finds the evidence establishes the following.

Sunday, April 28, 1963, Harding and Taubl, while walking along the tracks of the New York, New Haven and Hartford railroad in the vicinity of the passenger station at Stamford, Connecticut, noticed certain mail bags unattended on a mail cart at the station. They went to the International Hotel on Atlantic Street, Stamford, where Taubl entered his room. Harding left but returned shortly to the

---

1. Prior to trial, upon motion of defendant Harding and with the consent of the government, the Court dismissed as against Harding two other counts charging Harding and Taubl, in violation of 18 U.S.C. §§ 1707 and 1708, with having stolen the two mail pouches and mail sack and having stolen from an authorized mail depository.

2. Prior to the trial of defendant Harding, defendant Taubl had pleaded guilty to each of the six counts of the indictment and had been sentenced.

3. Glynn, named as a co-conspirator but not as a co-defendant in the instant case, previously had pleaded guilty to, and had been sentenced upon, charges of receiving and possessing checks stolen from the mail in violation of 18 U.S.C. § 1708. Called by the government as a witness at the trial of the instant case, Glynn at first refused to take the witness stand; later, although he took the stand, he refused to be sworn as a witness. The Court thereupon held him in contempt, sentenced him and appointed counsel to prosecute his appeal from the contempt conviction.

hotel with a car in which he and Taubl drove to the railroad station. They took two mail pouches and a mail sack from the unattended mail cart, loaded them in their car, drove to the hotel and carried them to Taubl's room.

At this point there was some conflict in the testimony as to whether Taubl cut open one of the mail pouches or the mail sack. In any event, while Harding was out of the room temporarily, Taubl did cut open one of the three mail containers and started to open the mail he took from it. Upon Harding's return to the room, he and Harding together continued to open the mail from the one container. After a while Taubl fell asleep. While he slept, Harding cut open the remaining two mail containers and opened the mail he took from them. When Taubl awoke, Harding presented him with a list he had prepared showing the total of all checks and money orders they had taken from the three mail containers. Harding and Taubl each participated in sorting the checks and money orders. At the trial, Taubl identified at least seven checks he or Harding had taken from the mail containers.

After completing the opening of the mail taken from the containers and sorting the checks and money orders, Harding and Taubl together took all the checks and money orders to Glynn's room at the YMCA in Stamford. Previously Glynn had instructed Taubl to take only mail bags with "blue tags." In Glynn's room, he advised Harding and Taubl which checks could be cashed and which could not be cashed.

Harding, Taubl and Glynn together went to Mike's Restaurant & Bar in Stamford. Glynn alone entered and cashed a United States Treasury check in amount of $16.20 payable to Alden K. Sibley, on the back of which Taubl had endorsed the name of "William S. Gordon, 65 Westway, Wethersfield, Conn." This was one of the checks Harding and Taubl had taken from one of the cut-open mail containers. Upon leaving the restaurant, Glynn gave a $10 bill to either Harding or Taubl.

Harding, Taubl and Glynn then took a train from Stamford to New York City where they tried to cash some of the checks. Unsuccessful, they returned to Stamford.

The following day, Monday, April 29, 1963, at noon, Taubl met Glynn in front of the Plaza Theater in Stamford and, pursuant to plans agreed upon the previous day by Harding, Taubl and Glynn, Taubl gave Glynn four United States Treasury checks totalling $484.35, each payable to Alden K. Sibley and on the back of each of which Taubl had written the same Gordon endorsement noted above. These checks had been taken by Harding and Taubl from the mail containers. Glynn alone entered the main office of the Fairfield County Trust Company in Stamford and cashed the four checks. Upon leaving the bank, Glynn gave Taubl $320, keeping the balance of $164.35 for himself. Taubl returned to his room at the hotel and there gave Harding $160 as his share of the proceeds of the four checks which had been cashed.

Two days later, Wednesday, May 1, 1963, Taubl gave Glynn another check which had been taken by Harding and Taubl from the mail containers. This was a check in amount of $338.52 payable to William Tyler Clark, on the back of which Taubl had written the same Gordon endorsement noted above. Glynn alone entered the office of the Stamford Savings Bank in Stamford and cashed the check. Upon leaving the bank, Glynn gave Taubl two-thirds of the proceeds of the check. Taubl returned to the hotel and there gave Harding one-third of the proceeds of the check.

Sometime thereafter Harding and Taubl discarded the mail pouches, the mail sack and some of the remaining mail in a culvert in the vicinity of Wire Mill Road, Stamford. On the same day Harding took a blue canvas bag, into which more of the stolen mail had been placed, and threw it into a river in Greenwich.

While there was some evidence of drinking and use of drugs on the part

of Harding during some of the times referred to above, the Court finds that on the occasion of each critical event between the moment on April 28, 1963 when Harding and Taubl first saw the mail bags unattended on a mail cart at the railroad station until Harding threw the blue canvas bag containing mail into the river sometime after May 1, 1963, Harding was not in such a state of intoxication or narcosis that his mind was incapable of forming a specific intent to commit against the United States the offenses charged. For example, Harding clearly was shown to have possessed the requisite specific criminal intent on April 28, 1963 when he and Taubl agreed to cut open the mail pouches and mail sack for the purpose of stealing mail therefrom; when Harding in fact did cut them open, or aided and abetted in cutting them open; when Harding met with Taubl and Glynn in the latter's room to determine which of the checks taken from the mail containers could be cashed; and when Harding, Taubl and Glynn agreed that Glynn should attempt to cash the four United States Treasury checks totalling $484.35. On each of these occasions, among others, there was no evidence of drinking or the use of drugs on the part of Harding. He knew precisely what he was doing. He acted coolly, deliberately and with the requisite specific criminal intent.

## CONCLUSIONS OF LAW

(1) Defendant Harding is guilty as charged in Count One of cutting open on April 28, 1963 in Stamford, Connecticut, a United States mail pouch labelled "GREENWICH CONN FR SPRING & NY TR 60", with specific intent to rob or steal mail contained therein, in violation of 18 U.S.C. § 1706, either as principal, or as an aider and abettor pursuant to 18 U.S.C. § 2.

(2) Defendant Harding is guilty as charged in Count Two of cutting open on April 28, 1963 in Stamford, Connecticut, a United States mail pouch labelled "GREENWICH CONN N TR 60 FR GRAND CENT STA", with specific intent to rob or steal mail contained therein, in violation of 18 U.S.C. § 1706, either as principal, or as an aider and abettor pursuant to 18 U.S.C. § 2.

(3) Defendant Harding is guilty as charged in Count Three of cutting open on April 28, 1963 in Stamford, Connecticut, a United States mail sack labelled "GREENWICH CONN FR PUBLISHERS' WEEKLY PHILADELPHIA 40, PA.", with specific intent to rob or steal mail contained therein, in violation of 18 U.S.C. § 1706, either as principal, or as an aider and abettor pursuant to 18 U.S.C. § 2.

(4) Defendant Harding is guilty as charged in Count Six of knowingly and wilfully conspiring, in violation of 18 U.S.C. § 371, with Taubl on or about April 28, 1963 in Stamford, Connecticut, to commit the offenses enumerated in paragraphs (1), (2) and (3) above, in violation of 18 U.S.C. § 1706.

(5) Defendant Harding is guilty as charged in Count Six of knowingly and wilfully conspiring, in violation of 18 U.S.C. § 371, with Taubl and Glynn on April 28, 1963, and diverse dates thereafter, in Stamford, Connecticut, to steal property used by the postal service and to steal mail from an authorized depository, in violation of 18 U.S.C. § 1707 and 18 U.S.C. § 1708, respectively.

(6) Defendant Harding is not guilty as charged in Count Six of knowingly and wilfully conspiring, in violation of 18 U.S.C. § 371, with Taubl and Glynn, or either of them, to forge or utter obligations of the United States in violation of 18 U.S.C. § 471 or 18 U.S.C. § 472, respectively.

In short, giving full weight and effect to the presumption of innocence, the Court nevertheless finds that the government has sustained its burden of proving beyond a reasonable doubt each essential element of the crimes charged in Counts One, Two and Three and, to the extent indicated, in Count Six.

The Court accordingly finds defendant guilty upon Counts One, Two, Three and Six of the indictment.

The case will be continued pending receipt of a presentence report. Sentence will be imposed Monday, December 14, 1964, at 10:00 A.M. in New Haven.

Defendant Harding is remanded to the custody of the United States Marshal pending imposition of sentence.

The Court expresses its appreciation to John N. Cole, Esq. and Robert A. Benson, Esq. who, as court-appointed counsel, have rendered extraordinarily competent services to their indigent client, in the highest tradition of the bar.[4]

---

4. Appeal in this case to the United States Court of Appeals for the Second Circuit was withdrawn February 4, 1965.